14 CV 9661

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RUSSELL SLIFER,

        Plaintiff,

v.

CG TECHNOLOGY, L.P.,

        Defendant.

Civil Action No. _____

RECEIVED
DEC 08 2014
U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT FOR DECLARATORY**
**JUDGMENT AND DAMAGES FOR**
**BREACH OF CONTRACT**

**Jury Trial Demanded**

Plaintiff Russell Slifer, by and through his undersigned counsel, by way of Complaint against Defendant CG Technology, L.P., alleges and states as follows:

## NATURE OF THE ACTION

1. This lawsuit arises from the failure of Cantor Fitzgerald's gaming company, CG Technology, L.P. (formerly known as Cantor G&W (Nevada), L.P.), to make royalty payments owed to Plaintiff under the express terms of a 2008 patent assignment agreement. This straightforward breach of contract entitles Plaintiff to money damages and reassignment of the subject patent back to him.

## PARTIES

2. Plaintiff Russell Slifer ("Plaintiff" or "Slifer") is a citizen of the United States and resides in the County of Ada, State of Idaho.

3. Defendant CG Technology, L.P. ("Defendant" or "Cantor"), is a Nevada limited partnership, formerly known as Cantor G&W (Nevada), L.P., involved in the business of mobile gaming (specifically dealing with games of chance, i.e. gambling). It is a subsidiary of Cantor

Fitzgerald, L.P. and is managed and/or operated, at least in part, from joint offices at 499 Park Avenue, New York, New York.

## JURISDICTION AND VENUE

4.      This is a diversity-of-citizenship case. Plaintiff is a citizen of Idaho and Defendant is a citizen of Nevada. The amount of damages claimed is at least $100,000, which is more than the $75,000 jurisdictional minimum. This Court therefore has jurisdiction under 28 U.S.C. § 1332.

5.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and the contract at issue provides for venue in this judicial district.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff Slifer is the sole inventor of U.S. Patent Nos. 6,342,010 and Re39818 (the "Patents"), which disclose an invention to authorize participation in mobile gaming based on a player's age. Prior to August 29, 2008, Plaintiff was the sole owner of the Patents.

7.      The invention disclosed in the Patents is very useful to commercial mobile gaming, particularly when it involves games of chance (i.e. gambling) because of state gaming laws that require age verification of all interactive gaming participants.

8.      CG Technology asserts on its website, www.cgtglobal.com, that it was "the first company licensed by the Nevada Gaming Commission to manufacture, distribute and operate a mobile gaming system in the state, it is also a leader in providing mobile gaming technology for casino-style games, and mobile sports wagering technology in the state of Nevada and internationally." CG Technology further asserts that it "estimates it now has over 30% of the Nevada sports wagering market and processes over 50% of Nevada technology-based wagers."

2

9.      Upon information and belief, the remarkable success of CG Technology's business has been based in part upon its use of the invention disclosed in the Patents.

10.      Prior to August 29, 2008, attorneys for Cantor Fitzgerald, L.P., representing its subsidiary Cantor G&W (Nevada), L.P., opened negotiations with Slifer to acquire rights in the Patents. The drafting and negotiating for Cantor occurred in New York, NY. Rather than seeking only a license under the Patents, Cantor sought an outright assignment of the Patents. Cantor proposed that once the Patents were assigned to it, Cantor would embark on a program to license the Patents to third parties and share proceeds of the licensing with Slifer.

### The Patent Licensing Agreement

11.      On August 29, 2008, Slifer and Cantor executed a Patent Licensing Agreement (the "Agreement") in which Slifer contingently assigned the Patents to Cantor in exchange for the agreed payment terms.

12.      Paragraph 2(a) of the Agreement states that "Seller [Slifer] hereby sells, transfers, conveys, and assigns to Cantor all right, title and interest in and to the Patent Rights."

13.      As consideration, the Agreement provided for three types of payments to Slifer: (a) an initial payment, (b) ordinary Royalties, and (c) contingent "Minimum Royalty Payments."

14.      The initial payment was $50,000, due upon execution of the Agreement. Paragraph 3(a) of the Agreement states:

> Cantor shall pay Seller [Slifer] the sum of fifty thousand dollars ($50,000) concurrently with the assignment from Seller to Cantor of the Patent Rights.

15.      Royalties were to be paid to Slifer from Cantor licensing revenues, at the rate of ten percent of net income from licensing the Patents. Paragraph 3(b) of the Agreement states in pertinent part:

Cantor shall pay Slifer royalties ("Royalties"), not to exceed two hundred fifty thousand dollars ($250,000) (the "Maximum Amount") in the aggregate, in the amount of 10% of any Net Income. "Net Income" means all Revenue less all Costs. "Revenue" means all revenue that is actually received by Cantor in exchange for (i) a license to the Patent Rights or (ii) infringement of the Patent Rights. . . . "Costs" means all costs directly incurred in actually, preparing to, or attempting to license, and all costs directly incurred in actually, preparing to, or attempting to enforce the Patent Rights . . . .

16.     The Agreement also provides for a minimum licensing performance contingency.

If after five years Slifer had not been paid $100,000 (i.e. the sum of the $50,000 initial payment

plus at least $50,000 in Royalties), Cantor must either return the Patents to Slifer or pay

Minimum Royalty Payments of $250,000 ($50,000 per year for the next 5 years). In full,

Paragraph 3(d) provides:

> If Seller has been paid less than one hundred thousand dollars ($100,000.00) during the time period from the Effective Date [August 29, 2008] to sixty months after the Effective Date [August 29, 2013], Cantor shall, in Cantor's sole and exclusive discretion, either (i) assign back to Slifer all of Cantor's right, title and interest in the Patent Rights, or (ii) pay Minimum Royalty Payments each year beginning at the end of sixty months from the Effective Date of this Agreement (but for the avoidance of doubt in no event will more than the Maximum Amount in the aggregate ever be paid to Seller). Minimum Royalty Payments means $50,000.00 per year provided the Patent Rights have not been invalidated, rendered unenforceable, or rendered incapable of generating net Income, and Minimum Royalty Payments means $0 otherwise.

17.     Paragraph 3(d) set out a performance guarantee that Slifer had insisted on before

entering into the Agreement. His compensation in the form of Royalties was based on Cantor's

representation that it intended to license the Patents to third parties. This Paragraph, in

combination with the preceding paragraphs specifying the payments due under the Agreement,

was designed to ensure that Cantor's representation was accurate, and that it was not intending to

use the Patents solely for its own purposes without making full and fair payment to Slifer.

4

18.     The consequences of satisfying the conditions to trigger Paragraph 3(d) created a strong financial incentive for Cantor to generate Royalties for Slifer during the initial sixty-month period. Failure to generate at least $50,000 in Royalties would require Cantor to make a choice: either make $250,000 in additional payments—the Maximum Amount, as defined by Paragraph 3(b)—or simply "assign back" the Patents to Slifer.

19.     By giving this choice to Cantor, the Agreement ensured that Slifer would be compensated fairly for the Patents if Cantor actually considered them to be valuable. If Cantor did not believe the Patents valuable, and it genuinely believed that that was the reason why insufficient Royalties were generated to avoid triggering Paragraph 3(d), then Cantor could simply choose the "assign back" option and cut its losses. But if Cantor *did* believe the Patents were valuable, and wanted to use them exclusively for itself—without licensing them to third parties and generating Royalties—then Cantor had to pay the full Maximum Amount of Royalties that Slifer could have earned if Cantor had sought to generate Royalties, as Cantor had previously represented it planned to do.

20.     In addition, Paragraph 3(f) states that Cantor G&W (Nevada), L.P. will "provide annual statements to Seller detailing Revenue, Costs and Net Income until aggregate Royalties paid to Seller are the Maximum Amount."

21.     In Paragraph 11 of the Agreement, the parties agreed that "Any dispute or adjudication regarding the terms of or enforcement of the terms of this Agreement must be submitted solely in the United States District Court for the Southern District of New York," and that the Agreement would be "governed by and construed in accordance with the internal laws of the state of New York."

5

## COUNT I

### Breach of Contract

22.     Plaintiff hereby incorporates each and every allegation contained in the paragraphs set forth above, as if fully set forth herein.

23.     Plaintiff has fulfilled all of his obligations under the Agreement, including without limitation assigning the Patent Rights to Cantor on or shortly after August 29, 2008.

24.     Consistent with Paragraph 3(a) of the Agreement, Cantor made an initial payment of $50,000 to Slifer on or shortly after the Effective Date of the Agreement.

25.     Cantor failed to pay any Royalties pursuant to Paragraph 3(b) of the Agreement to Slifer at any time from August 29, 2008 ("the Effective Date") to August 29, 2013 ("sixty months from the Effective Date of the Agreement").

26.     Cantor's failure to make any Royalty payments to Slifer during that time period meant that the total compensation paid was only $50,000, much less than the $100,000 required to avoid triggering Paragraph 3(d). Thus, Paragraph 3(d) was triggered.

27.     The conditional obligations of Paragraph 3(d) required Cantor to either begin making Minimum Royalty Payments in the amount of $50,000 per year for five years starting on August 29, 2013, or to "assign back" the Patents to Slifer.

28.     Cantor made no Minimum Royalty Payment, as defined by Paragraph 3(d), to Slifer on or after August 29, 2013, as provided by Paragraph 3(d) of the Agreement.

29.     Cantor has retained ownership of the Patents and refused to "assign back" the Patents to Slifer as alternatively permitted by Paragraph 3(d).

30.     Because Cantor failed to choose either option available under Paragraph 3(d) after Paragraph 3(d) was triggered, Cantor is in material breach of the Agreement.

6

31. Plaintiff has suffered damages attributable to Cantor's breach. Plaintiff has not had the use of the two $50,000 Minimum Royalty Payments that should have been paid on August 29, 2013 and August 29, 2014. In addition, because Cantor refused to assign the rights back to Plaintiff on August 29, 2013, Plaintiff has lost whatever revenue or profit he might have obtained since that time—including collecting reasonable royalties from Cantor to the extent Cantor wanted to continue using the invention disclosed in the Patents without paying the Minimum Royalty Payments.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

32. Plaintiff hereby incorporates each and every allegation contained in the paragraphs set forth above, as if fully set forth herein.

33. Cantor failed to provide to Slifer an "annual statement" relating to its "Revenue, Costs and Net Income" relating to the licensing of the Slifer Patents for any of the years 2009, 2010, 2011, or 2012, as was required by Paragraph 3(f) of the Agreement.

34. Upon information and belief, Cantor made no efforts during the initial sixty month period of the Agreement to use the Patents to generate Revenue from third parties, and thus Royalties for Slifer.

35. Although the Agreement did not expressly require Cantor to attempt to generate Revenue, Slifer understood the Agreement as requiring that such attempts would be made if Cantor wished to avoid triggering the conditional obligations of Paragraph 3(d).

36. A reasonable person in Slifer's position at the time the Agreement was made would be justified in understanding that Cantor needed to successfully license the Patents to third

7

parties and generate actual Revenue sufficient to pay at least $50,000 in Royalties pursuant to Paragraph 3(b) in order to avoid triggering Paragraph 3(d).

37.     Cantor's retention of the Patents despite its failure to make any significant attempt to generate Revenue, as defined by Paragraph 3(b) of the Agreement, during the first sixty months after the Effective Date of the Agreement constituted a breach of the contract's implied covenant of good faith and fair dealing.

38.     Cantor is liable to Plaintiff for damages caused by this breach, including but not limited to compensation for the loss of use and the diminution in value of the Patents since August 29, 2013, if not earlier.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.     An assignment of all right, title and interest in United States Patent Nos. 6,342,010 and RE39,818 to Plaintiff, effective retroactively as of August 29, 2013 (or earlier, if justice so requires);

b.     Compensatory damages for the loss of use and the diminution in value of the Patents during the period from August 29, 2013 to the date of assignment, in an amount to be determined at trial not less than $100,000.00;

c.     Compensatory damages in the amount of $250,000.00, representing the Minimum Royalty Payments due on August 29 of 2013, 2014, 2015, 2016 and 2017 under Paragraph 3(d) of the Agreement;

d.     Prejudgment interest at the New York statutory rate of nine percent (9%);

e.     An award of attorney's fees and costs; and

f.     Such other and further relief as the Court deems just and proper.

8

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.


Dated: December _8_, 2014


Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
641 Lexington Avenue, 13th Floor
New York, New York 10022
Telephone: (212) 328-9559
Facsimile: (212) 328-9560
Brian@clintonbrook.com

Wayne A. Jones (WJ 0763)
JONES, IP
2225 East Bayshore Road, Suite 205
Palo Alto, California  94303
Telephone:  (650) 424-8100
Facsimile:  (650) 906-6200
Wjones@jonesip.com

*Attorneys for Plaintiff Russell Slifer*

9