UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSSELL SLIFER,<br><br>                Plaintiff,<br><br>   v.<br><br>CG TECHNOLOGY, L.P.,<br><br>                Defendant. | Civil Action No. 14-CV-9661 (ALC)(SN) |

**DEFENDANT'S COUNTER-STATEMENT OF UNDIPSUTED MATERIAL FACTS**

Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure and the Individual Practices of this Court, Defendant CG Technology, L.P. ("Cantor" or "Defendant") submits the following Counter-Statement of Undisputed Material Facts in opposition to Plaintiff Russell Slifer's ("Slifer" or "Plaintiff") motion for partial summary judgment.

1. On January 29, 2002 the United States Patent and Trademark Office issued U.S. Patent No. 6,342,010 to Russell D. Slifer (hereinafter, "Slifer").

Response: Cantor does not dispute the facts stated in paragraph 1 of Plaintiff's Statement of Undisputed Material Facts.

2. On September 4, 2007 the United States Patent and Trademark Office issued U.S. Patent No. RE39,818 to Slifer.

Response: Cantor does not dispute the facts stated in paragraph 2 of Plaintiff's Statement of Undisputed Material Facts.

3. On August 29, 2008, Slifer and Cantor G&W (Nevada), L.P. (hereinafter, "<u>Cantor</u>"), executed a Patent Assignment Agreement (hereinafter, the "<u>Agreement</u>").

Response: Cantor does not dispute the facts stated in paragraph 3 of Plaintiff's Statement of Undisputed Material Facts.

4. A true and correct copy of the final, fully executed Agreement was produced by Defendant at Bates range CG000328 to CG000343 and is reproduced in full as Exhibit 10 to the Declaration of Russell Slifer dated August 28, 2015.

Response: Cantor does not dispute the facts stated in paragraph 4 of Plaintiff's Statement of Undisputed Material Facts.

5. Pursuant to the Agreement, Slifer assigned his rights in the 6,342,010 and RE9,818 patents (hereinafter, the "<u>Patents</u>") to Cantor in exchange for specified payment terms.

Response: Cantor does not dispute the facts stated in paragraph 5 of Plaintiff's Statement of Undisputed Material Facts.

6. As required by Paragraph 2(a) of the Agreement, which states that "Seller [Slifer] hereby sells, transfers, conveys, and assigns to Cantor all right, title and interest in and to the Patent Rights", Slifer assigned the Patent Rights to Cantor on or shortly after August 29, 2008.

Response: Cantor does not dispute the facts stated in paragraph 6 of Plaintiff's Statement of Undisputed Material Facts.

7. Slifer has performed, or at least substantially performed, all obligations imposed on him by the Agreement.

Response: Cantor disputes the facts stated in paragraph 7 of Plaintiff's Statement of Undisputed Material Facts. Slifer has failed to perform obligations under the Agreement by failing to inform Cantor about potential infringers of the Patent Rights and potential licensees of

-2-

which Slifer was aware as required by Paragraph 5(b) of the Agreement. At his deposition in this case, Slifer testified that in 2013 he learned of potential infringers and licensees yet he did not inform Cantor. (Paul Decl. Ex. A)

8. Consistent with Paragraph 3(a) of the Agreement, Cantor made an initial payment of $50,000 to Slifer shortly after the Effective Date of the Agreement.

Response: Cantor does not dispute the facts stated in paragraph 8 of Plaintiff's Statement of Undisputed Material Facts.

9. Cantor failed to pay any "Royalties" (as defined in Paragraph 3(b) of the Agreement) to Slifer at any time from August 29, 2008 (the "Effective Date") to August 29, 2013 ("sixty months from the Effective Date of the Agreement").

Response: Cantor disputes the facts stated in paragraph 9 of Plaintiff's Statement of Undisputed Material Facts. Cantor was not obligated to pay Royalties to Slifer and therefore did not fail to do so. Furthermore, Cantor made an advance payment of Royalties of $50,000 to Slifer on August 27, 2013. (Slifer Decl. ¶¶ 42-43, Ex. 13)

10. Paragraph 3(d) of the Agreement provides:

If Seller has been paid less than one hundred thousand dollars ($100,000.00) during the time period from the Effective Date to sixty months after the Effective Date, Cantor shall, in Cantor's sole and exclusive discretion, either (i) assign back to Slifer all of Cantor's right, title and interest in the Patent Rights, or (ii) pay Minimum Royalty Payments each year beginning at the end of sixty months from the Effective Date of this Agreement (but for the avoidance of doubt in no event will more than the Maximum Amount in the aggregate ever be paid to Seller). Minimum Royalty Payments means $50,000.00 per year provided the Patent Rights have not been invalidated, rendered unenforceable, or rendered incapable of generating net Income, and Minimum Royalty Payments means $0 otherwise.

Response: Cantor does not dispute the facts stated in paragraph 10 of Plaintiff's Statement of Undisputed Material Facts.

11.     Cantor has never made a Minimum Royalty Payment to Slifer pursuant to Paragraph 3(d) of the Agreement.

Response:     Cantor does not dispute the facts stated in paragraph 11 of Plaintiff's Statement of Undisputed Material Facts.

12.     Cantor currently still owns the Patents.

Response:     Cantor does not dispute the facts stated in paragraph 12 of Plaintiff's Statement of Undisputed Material Facts.

13.     During negotiations over the language that became Paragraph 3(d), Cantor's in-house counsel, Dean Alderucci, was the only individual associated with Cantor who communicated with Slifer.

Response:     Cantor does not dispute the facts stated in paragraph 13 of Plaintiff's Statement of Undisputed Material Facts.

14.     One June 3, 2008, Slifer proposed the following language to be incorporated into a new section of the Agreement relating to Cantor's obligations with respect to attempting to generate income from the Patents, which in turn would generate royalty payments to Slifer:

**7.  Cantor Obligations**

   a.     Cantor agrees to exercise reasonable efforts to obtain revenue through license and/or infringement enforcement to generate Net Income from the Patent Rights.

   b.     Cantor agrees to assign back to Slifer all of Cantor's right, title and interest in the Patent Rights if the Net Income is less than one million dollars ($1,000,000) at the end of sixty months from the execution date of the Agreement.

Response:     Cantor does not dispute the facts stated in paragraph 14 of Plaintiff's Statement of Undisputed Material Facts.

15.     During a phone call on June 11, 2008, Alderucci convinced Slifer to delete his proposed Paragraph 7(a) because it was unnecessary in light of the requirement in proposed

-4-

Paragraph 7(b) that Cantor "assign back" the Patents to Slifer if it failed to generate sufficient income from the Patents.

Response: Cantor objects to the facts stated in paragraph 15 of Plaintiff's Statement of Undisputed Material Facts because these facts are not supported by admissible evidence. To the extent the Court deems these facts admissible, Cantor disputes the facts stated in paragraph 15 of Plaintiff's Statement of Undisputed Material Facts. Cantor never agreed to Plaintiff's proposed Paragraph 7(a) in any form and documentary evidence demonstrates that the parties agreed to exclude the proposed Paragraph 7(a) from the Agreement. (Slifer Decl. ¶¶ 31-34, Ex. 7-10)

16. During the phone call on June 11, 2008, Alderucci said that Cantor agreed in substance with Slifer's proposed Paragraph 7(b).

Response: Cantor objects to the facts stated in paragraph 16 of Plaintiff's Statement of Undisputed Material Facts because these facts are not supported by admissible evidence. To the extent the Court deems these facts admissible, Cantor disputes the facts stated in paragraph 16 of Plaintiff's Statement of Undisputed Material Facts. Cantor never agreed to Slifer's proposed Paragraph 7(b) in substance and documentary evidence demonstrates that Slifer's proposed Paragraph 7(b) was not included in the next turn of the term sheet or in the final Agreement. (Slifer Decl. ¶¶ 31-34, Ex. 7-10)

17. During the phone call on June 11, 2008, Alderucci suggested revising proposed Paragraph 7(b) to refer to the amount of royalties paid rather than the amount of net income generated, because that would be more consistent [with] the other proposed paragraphs to which Cantor agreed, which referred to the amount of royalties.

Response: Cantor objects to the facts stated in paragraph 17 of Plaintiff's Statement of Undisputed Material Facts because these facts are not supported by admissible evidence. To the extent the Court deems these facts admissible, Cantor disputes the facts stated in paragraph 17 of Plaintiff's Statement of Undisputed Material Facts. Cantor never agreed that revising Plaintiff's proposed Paragraph 7(b) to refer to the amount of Royalties paid or that any of Cantor's modifications to the proposed Paragraph 7(b) would be more consistent with other provisions in the Agreement that referred to the amount of Royalties. Furthermore, documentary evidence demonstrates that the parties agreed to exclude the proposed Paragraph 7(b) from the next turn of the term sheet and from the final Agreement. (Slifer Decl. ¶¶ 31-34, Ex. 7-10)

18. During the phone call on June 11, 2008, Alderucci said that his proposal to change the language in Slifer's proposed Paragraph 7(b) to reference $100,000 in Royalty payments was "equivalent" to Slifer's proposal referencing $1,000,000 in Net Income.

Response: Cantor objects to the facts stated in paragraph 18 of Plaintiff's Statement of Undisputed Material Facts because these facts are not supported by admissible evidence. To the extent the Court deems these facts admissible, Cantor disputes the facts stated in paragraph 18 of Plaintiff's Statement of Undisputed Material Facts. Cantor never proposed changing the language of Slifer's proposed Paragraph 7(b) to reference $100,000 in Royalty payments, nor did it ever agree that its revisions to the term sheet were equivalent to Slifer's proposal referencing $1,000,000 in Net Income. Furthermore, documentary evidence demonstrates that the parties agreed to exclude the proposed Paragraph 7(b) from the Agreement. (Slifer Decl. ¶¶ 31-34, Ex. 7-10)

19. At no point in time during the negotiations and drafting of the Agreement did Alderucci assert, suggest, indicate or imply that the reference to $100,000 in payments to Slifer referred to anything other than actual Royalty payments.

Response: Cantor disputes the facts stated in paragraph 19 of Plaintiff's Statement of Undisputed Material Facts. Cantor never agreed that the $100,000 threshold would be comprised of actual Royalty payments and documentary evidence demonstrates that the parties agreed to a minimum payment of $100,000 within five years of the Effective Date without any reference to actual Royalty payments. (Paul Decl. Ex. B, Slifer Decl. Ex. 10)

20. In an email dated July 7, 2008, Slifer agreed to a term sheet which included a Paragraph 7(a), which stated the $100,000 threshold amount with no reference to Royalties. (Slifer Decl. ¶¶ 31-32)

21. Paragraph 3(b) of the Agreement required Cantor to pay Slifer a maximum amount of $250,000 in Royalties derived from Revenues generated from the Patent Rights if infringers were identified and/or licenses sold and Revenues were obtained. (Slifer Decl. Ex 10)

22. The Agreement does not prohibit advance payments of Royalties. (Slifer Decl. Ex 10)

23. Paragraph 3(d) of the Agreement does not specify the source of the $100,000 threshold payment amount referenced therein nor does it require the $100,000 to be comprised of any particular type of payment. (Slifer Decl. Ex 10)

24. The Agreement does not state that Paragraph 3(d) cannot be satisfied without license revenue earned. (Slifer Decl. Ex 10)

25. In Paragraph 16 of the Complaint filed in this action, Slifer asserts that "[t]he Agreement also provides for a minimum licensing performance contingency. If after five years

Slifer had not been paid $100,000 (i.e. the sum of the $50,000 initial payment plus at least $50,000 in Royalties), Cantor must either return the Patents to Slifer or pay Minimum Royalty Payments of $250,000 ($50,000 per year for the next 5 years)."

26.     In Paragraph 18 of the Complaint filed in this action, Slifer asserts that "[f]ailure to generate at least $50,000 in Royalties would require Cantor to make a choice: either make $250,000 in additional payments -- the Maximum Amount, as defined by Paragraph 3(b) -- or simply "assign back" the Patents to Slifer."

27.     In Paragraph 26 of the Complaint filed in this action, Slifer asserts that "Cantor's failure to make any Royalty payments to Slifer during that time period meant that the total compensation paid was only $50,000, much less than the $100,000 required to avoid triggering Paragraph 3(d)."

28.     Paragraph 5(b) of the Agreement provides:

Seller [Slifer] shall notify Cantor of possible infringers of the Patent Rights and of possible licensees of the Patent Rights which Seller becomes aware of.

(Slifer Decl. Ex 10)

29.     In September 2013, Slifer became aware of at least one possible infringer of the Patent Rights and at least one potential licensee yet he did not notify Cantor. (Paul Decl. Ex. A)

30.     Paragraph 12 of the Agreement provides:

Each Party hereby acknowledges and agrees that the provisions set forth in this Agreement are fair, reasonable and necessary to protect the legitimate interests of the other Party (and its Affiliates where applicable) and that this Agreement was negotiated and bargained for and the consideration received by each Party reflects and assumes strict compliance with these provisions.

(Slifer Decl. Ex 10)

-8-

31.     Paragraph 15 of the Agreement provides:

<u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior agreements, representations and understandings of the parties, including any term sheet, "letter of intent," "letter of understanding," or similar document.  No addition to or modification of this Agreement will be binding unless executed in writing by both Parties.  Except as may be otherwise provided in this Agreement, no waiver of any of the provisions of this Agreement will be deemed, or will constitute, a waiver of any other provision, whether or not similar, nor will any waiver constitute a continuing waiver, and no waiver will be binding unless evidenced by an instrument in writing executed by the party making the waiver.

(Slifer Decl. Ex 10)

32.     Paragraph 16(c) of the Agreement provides:

<u>No Party Deemed Drafter</u>.  The parties agree that neither party will be deemed to be the drafter of this Agreement and that in the event this Agreement is ever construed by a court of law or equity, such court will not construe this Agreement or any provision hereof against either party as the drafter of the Agreement. Seller [Slifer] and Cantor, and each of them, acknowledging that both Parties have contributed substantially and materially to the preparation hereof.

(Slifer Decl. Ex 10)

33.     Slifer is a sophisticated party who holds a law degree and who has worked as a design engineer and intellectual property attorney, primarily in the patent area, for almost 30 years.  At the time Slifer negotiated the Agreement, he served as Chief Patent Counsel for Micron Technologies.  Slifer is currently the Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office. (Slifer Decl. ¶¶ 1-4)

34.     Paragraph 10(a) of the Agreement provides:

Any and all notices and demands by any Party to any other Party, required or desired to be given hereunder shall be in writing and shall be validly given or made only if deposited in the United States mail, certified or express, postage prepaid, return receipt requested, if made by Federal Express or other similar courier service keeping records of deliveries and attempted deliveries.  Service by

-9-

mail or courier will be conclusively deemed made on the first Business Day delivery is attempted or upon receipt, whichever is sooner.

(Slifer Decl. Ex 10)

35. Cantor sent by check an advance payment of Royalties in the amount of $50,000 (the "August 2013 Payment") to Slifer via UPS, who attempted to deliver the payment to Slifer on August 28, 2013. (Slifer Decl. ¶ 42, Ex. 13). Slifer received the check and has retained the August 2013 Payment. (Slifer Decl. ¶ 48).

36. On account of the Initial Payment and the August 2013 Payment, Cantor paid Slifer a total of $100,000 within five years of the Effective Date of the Agreement.

37. Cantor has performed all of its obligations under the Agreement. (Slifer Decl. ¶¶ 37, 42, Ex. 12, 13, 18)

38. Cantor provided Slifer with an accounting for the period August 29, 2008 through December 21, 2010 by letter dated December 21, 2010. (Slifer Decl. ¶ 40, Ex. 12).

39. Cantor provided Slifer with an accounting for the period December 21, 2010 through August 27, 2013 by letter dated August 27, 2013. (Slifer Decl. Ex 13).

40. Cantor provided Slifer with an accounting for the period August 27, 2013 through August 28, 2014 by letter dated August 28, 2014. (Slifer Decl. ¶ 49, Ex. 18).

41. The Agreement has not been terminated.

DATED: September 30, 2015                    Respectfully submitted,

                                                                  /s/ Michael S. Popok
Michael S. Popok, Deputy General Counsel
David A. Paul, Assistant General Counsel
110 East 59th Street
New York, New York 10022
(212) 610-3578 (MSP)
(212) 610-2298 (DAP)
*Attorneys for Defendant CG Technology, L.P.*