USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/13/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
   Russell Slifer,                          :

                Plaintiff,                 :         1:14-cv-9661

             -against-               :         **MEMORANDUM & ORDER**

   CG Technology, L.P.,            :

              Defendant.              :
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Russell Slifer brought suit against Defendant CG Technology, L.P., alleging breach of contract and breach of implied covenant of good faith and fair dealing over a contract entitled the Patent Assignment Agreement. From January 9, 2017 to January 17, 2017, the Court presided over a jury trial over these claims. At the close of arguments and before the case was submitted to the jury, Defendant moved pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law; the Court reserved judgment on the motion pending the jury's verdict. On January 17, 2017, the jury returned a unanimous verdict in favor of Plaintiff Russell Slifer against Defendant CG Technology, L.P. After the verdict was returned, Plaintiff sought to modify the jury's verdict and moved to include equitable relief and equitable judgment in the final judgment. Specifically, Plaintiff asks the Court to order Defendant to return the patent at issue in this case to Plaintiff, rescind the Patent Assignment Agreement, order Defendant to pay prejudgment interest, and refuse to grant a stay pending further motions or appeal.

    Defendant timely moved pursuant to Fed. R. Civ. P. 50(b) to renew its Rule 50(a) motion for judgment as a matter of law altering or amending the judgment rendered by the jury on the grounds that the jury had no legally sufficient evidentiary basis for its damages verdict. Defendant asks the Court to enter judgment as a matter of law in favor of Defendant, setting

aside the damages based on Plaintiff's damages model and claim for breach of the implied covenant of good faith and fair dealing as impermissible. In the alternative, Defendant seeks an order directing a new trial on damages pursuant to Fed. R. Civ. P. 59(a).

For the reasons set forth below, the Court grants Plaintiff's motion in part and denies Defendant's motion in its entirety.

## I. BACKGROUND

In 2008, Plaintiff and Defendant executed a Patent Assignment Agreement ("the Agreement"), governed by New York law. Def.'s Counter-Statement of Undisputed Material Facts (Def.'s Stmt.) ¶ 3; Slifer Decl. Ex. 10 ¶ 11. Under the Agreement, Plaintiff assigned his rights to two patents to Defendant in exchange for specified payment terms. Id. ¶ 5. In part, those terms provide for the immediate payment to Plaintiff of $50,000. Id. ¶ 8. Defendant made that initial payment. Id.

> Paragraph 3(d) of the Agreement contains additional payment terms. It states:
>
> If Seller has been paid less than one hundred thousand dollars ($100,000.00) during the time period from the Effective Date to sixty months after the Effective Date, Cantor shall, in Cantor's sole and exclusive discretion, either (i) assign back to Slifer all of Cantor's right, title and interest in the Patent Rights, or (ii) pay Minimum Royalty Payments each year beginning at the end of sixty months from the Effective Date of this Agreement (but for the avoidance of doubt in no event will more than the Maximum Amount in the aggregate ever be paid to Seller). Minimum Royalty Payments means $50,000.00 per year provided the Patent Rights have not been invalidated, rendered unenforceable, or rendered incapable of generating net Income, and Minimum Royalty Payments means $0 otherwise.

Slifer Decl. Ex. 10 ¶ 3(d).

Paragraph 3(b) establishes additional compensation to Plaintiff beyond 3(a)'s initial payment. It labels that compensation as "royalties" and sets it at ten percent of Defendant's

2

revenue from the patents. Paragraph 3(c) establishes a formula for the calculation of revenue (and thus, royalties) in specific transactions. Finally, paragraphs 3(e) and (f) set additional obligations on Defendant to refrain from selling its rights to the patents unless royalties are paid to Plaintiff and to provide Plaintiff with an accounting of Defendant's annual revenue, for the purpose of verifying correct payment of royalties.

Defendant never made a Minimum Royalty Payment as defined in paragraph 3(d) of the Agreement, nor did it provide Plaintiff with an accounting of the annual revenue. Def.'s Stmt. ¶ 11. Nor had it assigned back to Plaintiff its right, title, and interest in the patents. Id. ¶ 12. Instead, Defendant sent Plaintiff a check for $50,000 in August 2013. Id. ¶ 35. Summing the original $50,000 payment made immediately to Plaintiff when the Agreement was signed and the additional $50,000 payment made five years later, Defendant asserted that it had performed its obligation to pay "$100,000[] during the time period from the Effective Date to sixty months after the Effective Date . . . ." Id. ¶¶ 36-7; Slifer Decl. Ex. 10 ¶ 3(d).

Plaintiff sued Defendant, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The case proceeded to trial on both claims. At trial, Defendant argued that it had complied with the Agreement. Defendant asserted that because the plain language of Paragraph 3(d) of the Agreement speaks only of the payment of "less than one hundred thousand dollars ($100,000.00) during the time period from the Effective Date to sixty months after the Effective Date. . . ." and it therefore, says nothing of the origin of the funds used to make that payment, the payment to Plaintiff could come from any source. Plaintiff averred that Paragraph 3(d) required Plaintiff to receive royalty payments derived from profits Defendant received from utilizing the assigned patents. Because the $100,000 paid to Plaintiff did not

3

come from royalties, Defendant had breached the Agreement. Furthermore, because Defendant construed the Agreement in such a way as to deprive Plaintiff of the benefit of his bargain, Defendant had breached the implied covenant of good faith and fair dealing.

At the conclusion of the trial, the Court held a hearing on the jury instructions and verdict form. During the hearing on the verdict form, the parties disagreed over how the jury should be charged on damages. Specifically, with regard to damages and remedies, Defendants' proposed jury verdict form (ECF No. 110-1) in the relief section asked the jury if Plaintiff Russell Slifer was entitled to 1) monetary damages and, if so, what amount; and/or 2) equitable remedies.

In its first draft, the Court adopted the balance of Defendant's proposed jury verdict form and included the section on relief. During the hearing, however, Defendant objected to their own language and argued that this articulation was "bordering on rescission, which is a legal ruling that must come from the Court. And it's an equitable ruling that must come from the Court. It can't come from the jury. And so dictating the manner in which the jury could award that . . . is misleading and invading the province of the jury to decide what the damages might be." Trial Tr. 692:7-13, Jan. 13, 2017. The Court then specifically offered Defendant the opportunity to amend the general damages provision in the jury verdict form to provide for 1) "return of the patent" and 2) monetary damages in order to get "clear elucidation from the jury as to how they're awarding damages" in anticipation of "post-trial litigation about [damages]" and "to perhaps avoid…having another trial on this damages issue." Tr. 693:21- 694:2. Defendant found the Court's suggestion to be problematic because it gave the jury an option, returning the patent to Plaintiff, that the Defendant believed the jury was not authorized to do. Tr. 694:4-5. Later, Defendant offered the following amendment to the jury verdict form: (1) for money

4

damages relating to return of the patent and (2) for money damages relating to circumstances other than return of the patent. Tr. 705:10-13; 707:22-25. Plaintiff opposed this formulation on the grounds that it presented jurors with an either/or proposition when, in fact, Plaintiff could receive "both damages in this case." Tr. 708:8-9.

The Court additionally proposed that for further clarity on the issue of damages, the jury verdict form provide one damages section for the breach of contract claim and a separate damages section for the covenant of good faith and fair dealing claim. Tr. 708:17-23. Defendant opposed the proposal, saying "having two different damages section[s] related to the two different counts might confuse the jury. I think everybody is on the same page there's only going to be one damages award, if any, in the case, and that would come from the choices that we just discussed in the damage section." Tr. 709:4-8. The Court adopted the Defendant's proposed amendment to the jury form: (1) damages for failure to return the patent; and (2) damages for some other reason. Tr. 709:4.

After the hearing, the Court instructed the jury at length on both the breach of contract and breach of implied covenant of good faith and fair dealing. *See* Court Ex. 1 (Jury Charge) at 25-27, ECF No. 186. With regard to damages, the Court instructed the jury on compensatory damages. Id. at 28-29. Specifically, the Court instructed the jury that if it found "that the plaintiff has established breach of contract by a preponderance of the evidence, [it] should award money damages that would place the plaintiff back in the same position he would have been in had the defendant performed as obligated under the contract." Id. at 29. Next, the Court instructed the jury on calculating damages for a "breach that substantially defeats the purpose of

damages relating to return of the patent and (2) for money damages relating to circumstances other than return of the patent. Tr. 705:10-13; 707:22-25. Plaintiff opposed this formulation on the grounds that it presented jurors with an either/or proposition when, in fact, Plaintiff could receive "both damages in this case." Tr. 708:8-9.

The Court additionally proposed that for further clarity on the issue of damages, the jury verdict form provide one damages section for the breach of contract claim and a separate damages section for the covenant of good faith and fair dealing claim. Tr. 708:17-23. Defendant opposed the proposal, saying "having two different damages section[s] related to the two different counts might confuse the jury. I think everybody is on the same page there's only going to be one damages award, if any, in the case, and that would come from the choices that we just discussed in the damage section." Tr. 709:4-8. The Court adopted the Defendant's proposed amendment to the jury form: (1) damages for failure to return the patent; and (2) damages for some other reason. Tr. 709:4.

After the hearing, the Court instructed the jury at length on both the breach of contract and breach of implied covenant of good faith and fair dealing. *See* Court Ex. 1 (Jury Charge) at 25-27, ECF No. 186. With regard to damages, the Court instructed the jury on compensatory damages. Id. at 28-29. Specifically, the Court instructed the jury that if it found "that the plaintiff has established breach of contract by a preponderance of the evidence, [it] should award money damages that would place the plaintiff back in the same position he would have been in had the defendant performed as obligated under the contract." Id. at 29. Next, the Court instructed the jury on calculating damages for a "breach that substantially defeats the purpose of

the contract." Id. With regard to this type of breach, the Court instructed the jury, in relevant part, as follows:

> A breach that substantially defeats the purpose of the contract, however, may justify calculating damages differently based on the amount of gain that the defendant wrongfully obtained. Accordingly, if you find that defendant's breaching conduct substantially defeated the purpose of the Agreement, you may calculate damages either based an expectation damages theory or a restitution theory. Under either theory, in the absence of a readily available market price, the value the parties assign to a benefit may be the best valuation measure.
> Under an expectation damages theory, you can award Plaintiff what you find he would have received had Defendant not breached the contract. Here, although Defendant could have chosen to make Minimum Royalty Payments instead of transferring the Patents back to Mr. Slifer, it had to do that by August 2013. Therefore, you would calculate how much Mr. Slifer would have been able to receive or earn had the Patents been assigned back to him on August 29, 2013.
> Under the restitution theory, you would award Mr. Slifer the value of the property conveyed to Defendant, minus the value of what Defendant has already paid him. So under this theory, you would award Mr. Slifer the amount of money you think CG Technology has gained from the Patents.

Id. at 29-30.

The Court also provided a jury verdict questionnaire with seven questions. Court Ex. 2 (Verdict Form), ECF No. 187. In relevant part, the questionnaire asked the jury if it was 1) "awarding damages based on Defendant's failure to return the Patent" and, if so, how much; and 2) "awarding damages for some other reason" and, if so, how much. Id. at 3. The jury found that Defendant breached the Agreement as well as the covenant of good faith and fair dealing. Id. The jury awarded $250,000 for "Defendant's failure to return the Patent" and $150,000 "for some other reason." Id. at 3. The Court entered judgment in accordance with the jury's verdict (ECF No. 189) and the parties subsequently filed the present motions.

## II. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant argues that the Court should exercise its power under Rule 50 to strike the "other" category of damages awarded by the jury and reduce the judgment from $400,000 to $250,000 for two reasons. First, Defendant contends that the jury did not have a "legally sufficient evidentiary basis" to render a verdict over $250,000. Second, Defendant asserts that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing was duplicative of his breach of contract claim and therefore could not have been the basis for a damages award.[1]

### A. Legal Standard

Fed. R. Civ. P. 50(b) provides that "[i]f the court does not grant a motion for judgment as a matter of law" after a party has been heard fully at trial, that party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). The Court may properly grant a motion for judgment as a matter of law under Rule 50(b) "only if there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the moving party].'" Stratton v. Dep't for the Aging for the City of N.Y., 132 F.3d 869, 878 (2d Cir. 1997) (quoting LeBlanc–Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995)). When deciding a Rule 50(b) motion, "a district court is required to 'consider the evidence in the light most favorable to the

---

[1] In its motion for a new trial, Defendant makes essentially the same argument that the implied covenant claim should not have gone to the jury. The Court will address the argument that the implied covenant claim was redundant in Section III of this Memorandum.

7

party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'" LeBlanc–Sternberg, 67 F.3d at 429 (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 367 (2d Cir. 1988)).

A court should not grant a Rule 50(b) motion "unless the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to permit a reasonable juror to find in his favor." Arlio v. Lively, 474 F.3d 46, 51 (2d Cir. 2007). "[T]he court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998). In considering the motion, a court should defer to the jury's role as the trier of fact. See Fabri v. United Technologies Int'l Inc., 387 F.3d 109, 119 (2d Cir. 2004) (holding that a court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."); Meloff v. New York Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001). Thus, "judgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." Advance Pharm., Inc. v. United States, 391 F.3d 377, 390 (2d Cir. 2004) (quoting Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998)).

## B. Sufficiency of the Evidence

Within this framework, the Court considers Defendant's argument that it is entitled to judgment as a matter of law because the jury's verdict was not supported by the evidence. The Court's review of the record indicates that there is substantial evidence in support of the damages award.

Defendant first argues that the jury was not presented with evidence that could support its damages award, asserting that Plaintiff failed to adduce any evidence at trial that could provide legal justification for an award beyond "the contractual cap of $250,000" because the cap on royalties pursuant to the Agreement operates as a cap on damages. Furthermore, Defendant contends that the jury was not entitled to award Plaintiff lost profits because under New York law, lost profits had to have been contemplated by the parties. Robin Bay v. Merrill Lynch & Co., 07 Civ. 376(JMB), 2008 WL 2275902, at *7 (S.D.N.Y. June 2, 2008) ("[t]o recover lost profits, the plaintiff must show that the alleged loss is capable of proof with reasonable certainty."). Defendant asserts that the parties did not contemplate lost profits when they signed the Agreement in 2008. Def. Mem. Supp. Mot. JMOL/New Trial at 6. Therefore, any damages award in excess of $250,000 is inherently speculative and therefore should be stricken by the Court.

The Court's review of the record indicates that there was more than ample evidence from which the jury could properly award "other" damages over and above $250,000. Plaintiff's expert, Harry Gwinnell, testified regarding the specific amount of Plaintiff's damages. Although Defendant argues that it was prejudiced by Gwinnell's testimony, in which he opined that Defendant caused Plaintiff to incur economic loss in the amount of $3,068,780.00, Plaintiff

9

properly disclosed Gwinnell as an expert witness to Defendant pursuant to Fed. R. Civ. P. 26(a)(2) and Gwinell's testimony as to the amount of specific damages was based solely on evidence admitted at trial. His testimony reflected a simple computation based on evidence already in, or about to be in, the trial record. It was the jury's role to determine the reliability and weight of his testimony, and the Court was well within its discretion to allow the jury to consider it. Given this testimony and the corroborating evidence, when viewed in the light most favorable to the nonmoving party, there was sufficient evidence from which the jury could properly conclude that "other" damages over and above $250,000 were warranted.

### III. DEFENDANT'S MOTION FOR A NEW TRIAL

#### A. Legal Standard

In the alternative, Defendant moves for a new trial pursuant to Fed. R. Civ. P. 59(a). In contrast to a motion for judgment as a matter of law, "a motion for a new trial pursuant to [Rule] 59 may be granted . . . although there is evidence to support the jury's verdict, so long as the district court determines that, in its independent judgment, 'the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice.'" Nimely v. City of N.Y., 414 F.3d 381, 392 (2d Cir. 2005) (quoting Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004)). In deciding a motion for a new trial, "the district court [is] free to examine the evidence through its own eyes." Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 147 (2d Cir. 2001). "While the Court need not necessarily weigh the evidence in the light most favorable to the non-moving party, disagreement with the verdict alone is insufficient to justify ordering a new trial." Muller v. Costello, 997 F.Supp. 299, 302 (N.D.N.Y. 1998).

#### B. Analysis

Defendant provides four grounds for its motion pursuant to Rule 59(a). First, Defendant claims that Plaintiff's damages model was speculation that tainted the jury verdict and requires a new trial. The Court disagrees, since on the proof presented, Defendant cannot demonstrate that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice. In this case, the jury's verdict on damages was fully consistent with the weight of the evidence, which, based upon its verdict, the jury found to be credible. Thus, Defendant's motion for a new trial based on this argument is denied.

Second, Defendant contends that the Court erred in allowing Plaintiff to present evidence of Defendant's use of the patent because it only served to confuse the jury and produce a seriously erroneous result. The Court disagrees with Defendant's belief that Defendant's use of the patent was irrelevant since whether Defendant was using the patent was central to determining whether Defendant had breached the Agreement in any way. Defendant's use of the patent very well could have some additional relevance in calculating damages because its use or non-use could establish the potential value of the patent and its potential profitability. Thus, no new trial is warranted on these grounds.

Third, Defendant argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing was not sufficiently unique from his breach of contract claim, and therefore should not have gone to the jury. In order to simultaneously allege "breach of contract and implied covenant claims under New York law, a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." JPMorgan Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009). Thus,

"a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms." Id. In patent assignment cases where the compensation contemplates royalty payments, there is an implied duty to "work the patent." See Dwight & Lloyd Sintering Co. v. American Ore Reclamation Co., 44 F.Supp. 391, 393 (S.D.N.Y. 1937).

The substance of Plaintiff's implied covenant claim is that Defendant did not use the patent in a manner to generate royalties that would go to Plaintiff if the Defendant chose not to return the patent, which did not violate any express term of the contract. Thus, it was not error for the Court to instruct the jury that the covenant "may" exist in this case. The Court properly instructed the jury on the law and correctly charged the jury that the same set of facts and evidence could not support both a breach of contract claim and breach of implied covenant claim.[2] *See* New York Pattern Jury Instructions – Civil 4:1 at 86 (2017). Based on the record at trial, the Court cannot hold that it was seriously erroneous for the jury to have found a breach of the implied covenant that would be unique from Plaintiff's breach of contract claim. See Bailey v. Chattem, Inc., 684 F.2d 386, 396 (6th Cir. 1982) (holding that it was not error for the jury to find an implied duty of good faith for patent assignee to use reasonably good efforts to market an invention pursuant to a

---

[2] With regards to breach of the implied covenant of good faith and fair dealing, the Court instructed the jury, in relevant part, as follows:
> Moreover, the covenant is not duplicative of the parties' obligations under the contract. Thus, to the extent that the evidence is the same for Plaintiff's breach of contract claim and breach of implied covenant of good faith and fair dealing claim, you cannot find a breach of the implied covenant and can only consider whether the evidence supports the breach of the contract claim. The covenant of good faith and fair dealing is breached when a party acts in a manner that deprives the other party of the benefits of the agreement. Where the contract contemplates the exercise of discretion, the implied covenant includes a promise not to act arbitrarily, irrationally or in bad faith in exercising that discretion.

Court Ex. 1 (Jury Charge) at 26-27, ECF No. 186.

12

contract assigning patent rights). Therefore, Defendant's application for a new trial on these grounds is denied.

Finally, Defendant argues that the Court wrongly instructed the jury on the effect of Paragraph 3(d) and erroneously identified the section as an option clause as follows:

> Under an expectation damages theory, you can award plaintiff what you find he would have received had defendant not breached the contract. Here, *although defendant could have chosen to make minimum royalty payments instead of transferring the patents back to Mr. Slifer, it had to do that by August 2013.* Therefore, you would calculate how much money Slifer would have been able to receive or earn had the patents been assigned back to him on August 29, 2013.

Tr. 849:21-850:3 (emphasis added). Specifically, Defendant asserts that the charge deprived the jury of the ability to find that Plaintiff would have received $250,000 in Minimum Royalty Payments "and no more." Def. Mem. Supp. Mot. JMOL/New Trial at 15-17. According to Defendant, this problem arises from the Court's conflation of Paragraph 3(d) as an option in the colloquial sense with the legal term of art under New York law. In support of its argument, Defendant cites Kaplan v. Lippman, 75 N.Y.2d 320, 324 (N.Y. 1990) for the proposition that an option *only* exists when the operative clause confers a unilateral right to purchase property at a date certain. Defendant further relies on Seligson v. Russo, 300 A.D.2d 152, 153 (1st Dep't 2002) and Zora Realty Co. v. Green, 60 N.Y.S.2d 440, 445 (N.Y. Sup. Ct. Bronx Cnty. 1946) to assert that "the law surrounding options contracts cannot be applied to agreements that do not fit the narrow legal definition of an 'option.'" Def. Mem. Supp. Mot. JMOL/New Trial at 17.

Instead, Defendant asserts for the first time that Paragraph 3(d) is in fact an "alternative contract" because it conveys one party's "promis[e] to render some of two or more alternative performances, either one of which is mutually agreed upon as the bargained-for equivalent given

13

in exchange for the return performance by the other party." Id. (citing Eagle Star Ins. Co. v. Seneca Ins. Co., No. 94 CIV. 9106, 1995 WL 733642, at *3 (S.D.N.Y. Dec. 12, 1995)). As an "alternative contract," the Court should have instructed the jury that the proper remedy for breach is the least burdensome remedy to the breaching party, which in the case at bar, would be a payment of $250,000. Id. at 17-18 (citing Branhill Realty Co. v. Montgomery Ward & Co., 60 F.2d 922, 923 (2d Cir. 1932) ("Where a promisor has agreed to alternative performances, in case of breach without an election, the damages are measured by the alternative that will result in the smallest recovery.") (emphasis added); see also 5A Corbin on Contracts § 1079 (1964) ("For such a breach the measure of damages recoverable by the promisee is the value of that alternative that is the least burdensome and expensive to the promisor."). Defendant argues that the jury instruction contradicted New York law because it prohibited the jury from calculating damages according to the paradigm of the "least burdensome alternative" and resulted in a legally unsupported damages award.

While Defendant's statement of the law is correct with regard to the *type* of contract that was breached in the present case, this does not change the fact that from the verdict sheet, it is unclear whether the jury awarded the additional $150,000 to Plaintiff for breach of contract or for breach of the implied covenant of good faith and fair dealing. The Court previously offered Defendant the opportunity to amend the verdict sheet in a manner that would clarify whether any verdict above and beyond $250,000 was for breach of contract, breach of the implied covenant of good faith and fair dealing, or both. Defendant opposed the amendment, Tr. 709:4-8, and invited that error. Under the invited error doctrine, the party that invited or provoked the district court to commit a particular error may not complain of the error after the fact. Cassotto v.

14

Donahoe, 600 F. App'x 4, 6 (2d Cir. 2015), as corrected (Jan. 14, 2015). "Denying relief even for plain errors where a defendant deliberately provokes a procedural irregularity, the invited error doctrine seeks to avoid rewarding mistakes stemming from a defendant's own intelligent, deliberate course of conduct in pursuing his defense." United States v. Bastian, 770 F.3d 212, 218 (2d Cir. 2014).

Additionally, as noted above, Defendant asserts for the first time in its present motion that the Agreement is an "alternative contract," rather than an option clause that requires specific charging on damages. Even assuming, arguendo, that the Court committed error, Defendant did not object to the jury instruction's final formulation on the difference between the expectation and restitution theory of damages. Defendant cannot raise this objection for the first time pursuant to Rule 59(a). See Lavoie v. Pac. Press & Shear Co., a Div. of Canron Corp., 975 F.2d 48, 55 (2d Cir. 1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."); Gonzalez v. Bratton, 147 F.Supp.2d 180, 208 (S.D.N.Y. 2001) ("City Defendants never raised the issue ... during any of the charging conferences, nor did they express any request for instructions on these issues. Accordingly, these matters are deemed waived."). Therefore, Defendant's argument is waived and Defendant's motion for a new trial on this basis is denied. See Christensen v. County of Dutchess, 08 Civ. 9234, 2012 WL 12883776, at *2 (S.D.N.Y. 2012) (denying plaintiff's motion for a new trial pursuant to Rule 59(a) because plaintiff failed to object to the Court's jury instruction before contending in its motion for the first time that the jury instruction should not have gone to the jury), aff'd, 548 F. App'x 651, 653 (2d Cir. 2013).

## IV. PLAINTIFF'S MOTION TO AMEND JUDGMENT

Plaintiff moves for an amended judgment that grants specific performance, rescission of the Agreement, pre-judgment interest, and refusal to grant a stay pending further motions or appeal. For the reasons set forth below, Plaintiff's applications for an amended judgment and rescission are denied. Plaintiff's request for pre-judgment interest is granted. Plaintiff's request for a stay is denied.

Plaintiff first argues that the Court should award specific performance to Plaintiff in the form of ordering Defendant to return the patent to him. As Defendant pointed out, the Agreement is an "alternative contract." In an alternative contract, the proper remedy for breach of contract is the least burdensome to the breaching party. Branhill Realty Co. v. Montgomery Ward & Co., 60 F.2d 922, 923 (2d Cir. 1932) ("Where a promisor has agreed to alternative performances, in case of breach without an election, the damages are measured by the alternative that will result in the smallest recovery.").

Furthermore, under New York law, "specific performance is an 'extraordinary' remedy for which the requesting party must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice." Barton Grp., Inc. v. NCR Corp., 796 F.Supp.2d 473, 502 (S.D.N.Y. 2011), aff'd, 476 F. App'x 275 (2d Cir. 2012); see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am., No. 04 Civ. 10014(PKL), 2006 WL 1493132, at *7 (S.D.N.Y. May 31, 2006) ("'[B]efore the "extraordinary" equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice.'"). Indeed, "specific performance will not be ordered where money damages 'would be adequate to protect the expectation interest

16

of the injured party.'" Aristocrat Leisure Ltd., 2006 WL 1493132, at *8 (quoting Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 415 (2001)).

Here, the alternative that will result in the smallest recovery is the payment of $250,000, which the jury has already granted. Granting Plaintiff specific performance would result in an improper double recovery. See Slaughter v. La Compagnie Francaises Des Cables Telegraphiques, 119 F. 588, 589 (2d Cir. 1902). Therefore, Plaintiff's application for specific performance in the form of returning the patent is denied.

Plaintiff's request for rescission is also denied. Plaintiff did not plead rescission as a cause of action and thus cannot seek it now. *See Surlak v. Surlak,* 95 A.D.2d 371, 381 (2d Dep't 1983) ("A request for [rescission] must be contained in the pleadings as a cause of action ..., set forth in detail and with particularity.") Further, the jury has already awarded damages to Plaintiff. Having not pled rescission, Plaintiff cannot recover damages for breach of contract and also seek to rescind the contract. Accordingly, Plaintiff's claim for rescission is waived. See Ariel (UK) Ltd. v. Reuters Grp. PLC, No. 05 Civ. 9646(JFK), 2006 WL 3161467, at *7 (S.D.N.Y. Oct. 31, 2006), aff'd, 277 F. App'x 43 (2d Cir. 2008).

Next, Plaintiff seeks pre-judgment interest on his monetary damages. Under New York Law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." N.Y. C.P.L.R. § 5001(a). Here, Plaintiff requests pre-judgment interest as of the date of the breach of

contract: August 29, 2013. This request is consistent with the statutory framework and is therefore granted.

Finally, Plaintiff requests that no automatic stay be granted. In deciding whether to grant a stay pending appeal, the court must consider: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Nken v. Holder, 445 U.S. 418, 434 (2009). Under this standard, "[i]t is not enough that the chance of success on the merits be 'better than negligible,'" and "simply showing some possibility of irreparable injury fails to satisfy the second factor." In re New York Skyline, Inc., 520 B.R. 1, 4–5 (S.D.N.Y. 2014). The party requesting the stay bears the burden of proof. Id. at 5.

At this juncture, Plaintiff's motion is premature. Defendant's motion requesting a stay is not currently before the Court and the Court will not speculate as to its contents or arguments. Therefore, Plaintiff's request that the Court bar a stay is denied without prejudice.

V. CONCLUSION

For the foregoing reasons, Defendant's motion pursuant to Rules 50 and 59 is DENIED. Plaintiff's motion to amend the judgment to include specific performance, for rescission, and to refuse to grant Defendant a stay is DENIED. Plaintiff's motion for pre-judgment interest is GRANTED.

SO ORDERED.

Dated: June 13, 2017
New York, New York

ANDREW L. CARTER, JR.
United States District Judge